# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ELPIDA MEMORY, INC. and<br>ELPIDA MEMORY (USA) INC., | )<br>)<br>)<br>) |  |
| Plaintiffs, | )<br>) | C.A. No. 11-623-SLR |
| v. | )<br>)<br>) | **JURY TRIAL DEMANDED** |
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC, | )<br>)<br>) |  |
| Defendants. | )<br>) |  |

## ELPIDA'S BRIEF IN OPPOSITION TO IV'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER

*Of Counsel:*

George E. Badenoch
Richard M. Rosati
Thomas R. Makin
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Tel: (212) 425-7200

Dated: September 19, 2011
1028083 / 36354

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Elpida Memory, Inc. and
Elpida Memory (USA) Inc.*

## **TABLE OF CONTENTS**

                                                                                **Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

    A. The 10-1066 Action ................................................................................................1

    B. The Washington Action ..........................................................................................1

    C. The ITC Action .......................................................................................................2

    D. The 11-623 Action ..................................................................................................2

    E. Stay Of The 11-623 And Washington Actions .......................................................2

II. SUMMARY OF ARGUMENT ....................................................................................... 3

III. ARGUMENT ................................................................................................................... 4

    A. IV's Motion To Dismiss Or Transfer Should Be Denied, Because The Patents In This Case And The Patents In The Earlier-Filed 10-1066 Action In This Court Are Closely-Related And Should Be Tried Together ...................................4

    B. IV's Motion To Dismiss Or Transfer Should Be Denied Because Under A Proper Reading Of The First-To-File Rule, The First Filed Case Is IV's Earlier-Filed 10-1066 Action In This Court .........................................................8

        1. The Forum Of The First-Filed Case Is The Court In Which A Party First Brought Suit On The Subject Matter At Issue ........................................... 8

        2. In The Present Case, Delaware Is The Forum Of The First-Filed Case Between The Parties Concerning The Subject Matter At Issue Because IV Filed The Original 10-1066 Action In Delaware .................................... 10

        3. There Are No Exceptional Circumstances That Would Make It Unjust Or Inefficient To Proceed With The 11-623 Action ..................................... 11

    C. The 11-623 Action Is A Proper Declaratory Judgment Action Because There Is An Actual Controversy Between IV And Elpida, And Because It Was Brought In The Forum IV Originally Chose..........................................................12

    D. The Court Should Deny IV's Motion Without Prejudice, Or Defer Ruling On The Motion, Until After The ITC Action Is Returned To District Court ..............13

IV. CONCLUSION.............................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*,
 C.A. No. 06-514-GMS, 2007 WL 2892707 (D. Del. Sep. 30, 2007) .............................6, 7

*Abbott Laboratories v. Johnson & Johnson, Inc.*,
 524 F. Supp. 2d 553 (D. Del. 2007) ..........................................................................10, 11

*Apotex Inc. v. Sanofi-Synthelabo*,
 386 F. Supp. 2d 549 (S.D.N.Y. 2005) ..............................................................................13

*Applied Vision, Inc. v. Optical Coating Lab, Inc.*,
 No. C97-1233, 1997 WL 601425 (N.D. Cal. Sept. 23, 1997) ...........................................9

*Corixa Corp. v. IDEC Pharmaceutical Corp.*,
 C.A. No. 01-615-GMS, 2002 WL 265094 (D. Del. Feb. 25, 2002) ................................10

*Cosden Oil & Chem. Co. v. Foster Grant Co.*,
 432 F. Supp. 956 (D. Del. 1977) .................................................................................9, 12

*Ellenby Techs., Inc. v. AT Sys. Inc.*,
 C.A. No. 01-416-SLR, 2002 WL 356686 (D. Del. Feb. 8, 2002) ....................................11

*Fuji Photo Film Co., Ltd. v. Benun*,
 463 F.3d 1252 (Fed. Cir. 2006) ........................................................................................13

*Hooker Chemicals & Plastics Corp. v. Diamond Shamrock Corp.*,
 87 F.R.D. 398 (W.D.N.Y. 1980) ......................................................................................12

*Intel Corp. v. AmberWave Sys. Corp.*,
 233 F.R.D. 416 (D. Del. 2005) ..................................................................................7, 8, 9

*Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*,
 342 U.S. 180 (1952) ...........................................................................................................8

*Kimberly-Clark Corp. v. McNeil-PPC, Inc.*,
 260 F. Supp. 2d 738 (E.D. Wis. 2003) .........................................................................8, 10

*Maryland Casualty Co. v. Pac. Coal & Oil Co.*,
 312 U.S. 270 (1941) .........................................................................................................12

*Mattel, Inc. v. Louis Marx & Co.*,
 353 F.2d 421 (2d Cir. 1965) ..............................................................................................8

*Owens-Illinois Glass Container, Inc. v. B&H Manufacturing, Inc.*,
    13 U.S.P.Q.2d (BNA) 2061 (E.D. Cal. 1989) ................................................................... 9

*Remy Inc. v. CIF Licensing, LLC*,
    C.A. No. 06-785-GMS/MPT, 2008 WL 2358963 (D. Del. Jun. 9, 2008) ......................... 11

*Saes Getters S.p.A. v. Aeronex, Inc.*,
    219 F. Supp. 2d 1081 (S.D. Cal. 2002) ............................................................................ 9

*Terra Nova Insurance Co. Ltd. v. 900 Bar, Inc.*,
    887 F.2d 1213 (3d Cir. 1989) ......................................................................................... 13

*Thales Airborne Systems S.A. v. Universal Avionic System Corp.*,
    C.A. No. 05-853-SLR, 2006 WL 1749399 (D. Del. Jun. 21, 2006) ............................. 7, 12

*Time Warner Cable, Inc. v. USA Video Technology Corp.*,
    520 F. Supp. 2d 579 (D. Del. 2007) ............................................................................... 11

**Statutes**

28 U.S.C. § 1659(a)………………................................................................................. 2, 3, 13

Defendants Elpida Memory, Inc. and Elpida Memory (USA) Inc. (collectively, "Elpida") oppose the motion of plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "IV") to dismiss, or in the alternative, to transfer to the Western District of Washington, but Elpida submits that the Court should deny IV's motion without prejudice, or defer ruling on the motion until after parallel proceedings in the International Trade Commission ("ITC"), which will result in the present case being stayed, are complete.

## I.   NATURE AND STAGE OF THE PROCEEDINGS

There are currently pending three district court actions and an ITC investigation involving the same basic dispute, the same patent portfolio, and the same accused Elpida products.

### A.   The 10-1066 Action

IV filed the first district court action on December 8, 2010, against Elpida and two Hynix entities in this Court. *Intellectual Ventures I LLC et al. v. Hynix Semiconductor Inc. et al.*, Civil Action No. 10-1066-SLR (D. Del.) (the "10-1066 Action"). The action was filed after several months of negotiations in which IV sought to persuade Elpida to license IV's dynamic random access memory ("DRAM") patent portfolio. The complaint charges that Elpida's DDR2 and DDR3 Synchronous DRAM ("SDRAM") products infringe five patents that IV selected from that portfolio for enforcement.[1]

### B.   The Washington Action

IV filed the second district court action on July 11, 2011, in the Western District of Washington, charging that the same Elpida DDR2 and DDR3 SDRAM products infringe three

---

[1]   The complaint charges Hynix with infringing the same five patents and also charges that Hynix infringes two additional patents purportedly relating to "flash memory" products.

more patents from IV's DRAM portfolio. *Intellectual Ventures I LLC et al. v. Hynix Semiconductor Inc. et al.*, Civil Action No. 11-1145-RSL (W.D. Wash.) (the "Washington Action").[2] No new facts, such as newly issued or newly acquired patents, prompted the filing of the Washington Action.

### C. The ITC Action

IV filed a complaint in the ITC on July 12, 2011, the day after filing the Washington Action. *In re Certain Dynamic Random Access Memory and NAND Flash Memory Devices and Prods. Containing Same*, Inv. No. 337-TA-803 (I.T.C.) (the "ITC Action"). The ITC Action is based on the same patents as the Washington Action and names the same defendants. The ITC Action was instituted on August 31, 2011.

### D. The 11-623 Action

On July 14, 2011, Elpida filed the 11-623 Action, a declaratory judgment action mirroring the Washington and ITC Actions. *Elpida Memory Inc. et al. v. Intellectual Ventures I LLC et al.*, C.A. No. 11-623-SLR (D. Del.) (the "11-623 Action"). Elpida filed this action to have all closely related disputes between IV and Elpida heard in a single forum.

### E. Stay Of The 11-623 And Washington Actions

Now that the ITC has instituted its investigation, it is clear that the ITC Action will proceed first, and that both this declaratory judgment action and the Washington Action will be stayed pursuant to 28 U.S.C. § 1659(a).

---

[2] Again, the complaint also charges that Hynix flash memory products infringe two additional patents. It further adds several downstream customers. The complaint has also been amended to add two Nanya entities.

## II.     SUMMARY OF ARGUMENT

IV's motion should be denied, first and foremost, because it is inefficient and impractical to allow IV to try its DRAM patent enforcement actions against the very same Elpida products piecemeal, and in separate courts. The eight patents asserted against Elpida in the cases are closely related. All allegedly relate to incremental improvements in DRAM technology. Four name the same sole inventor. The accused products are identical. In short, the witnesses and documentary discovery will substantially overlap. Moreover, the entire DRAM patent portfolio was available to IV, and the subject of prior negotiations, before IV filed its first enforcement action in this Court. IV chose five patents to assert, and it chose this Court as its preferred forum. There are no new facts to prompt or legitimize IV's later decision to add three more patents in a new action in the Western District of Washington.

IV's motion also should be denied because it argues for a misapplication of the first-to-file rule. Under a proper reading of this rule, priority is given to the court where a party first brings suit on the subject matter at issue—not the court where a party adds new or amended claims. Here, the first-filed case is the 10-1066 Action brought by IV in this Court, not the later-filed case in Washington. The same Elpida products are accused of infringing three closely related patents from the same IV portfolio. And the defendants are the same, but for downstream customers who are not real parties-in-interest and two Nanya entities who were added in a recent amendment.

In any event, the Court does not have to decide IV's motion finally at this time because it is inevitable that both the 11-623 Action and the Washington Action will be stayed pursuant to 28 U.S.C. § 1659(a) pending the outcome of the ITC Action. Since the ITC Action will proceed first and may lead to a final resolution, or otherwise have a substantial impact on the scope of the issues the parties may wish to litigate further in district court, the Court should either deny IV's

3

motion without prejudice, or defer ruling on the motion, until the ITC proceedings are complete and the stays lifted.[3,4]

After the ITC proceeding is complete and the parties have decided which issues, if any, they wish to litigate further in district court, this Court and the court in the Western District of Washington can decide where those issues should be tried. While proper application of the first-to-file rule would dictate that the issues be tried here, the courts do have discretion in the matter, and Elpida is neutral with respect to which court tries any remaining issues—provided only that all remaining issues be tried in one proceeding in a single district court. Under no circumstances should IV be allowed to abuse the system through piecemeal litigation of closely related patent infringement charges.

## III.   ARGUMENT

### A.   IV's Motion To Dismiss Or Transfer Should Be Denied, Because The Patents In This Case And The Patents In The Earlier-Filed 10-1066 Action In This Court Are Closely-Related And Should Be Tried Together

The patents in the present declaratory judgment action and the patents in IV's earlier-filed 10-1066 Action in this Court present closely related and overlapping issues. It would be unreasonably burdensome and judicially inefficient to try them in different courts.

---

[3]   Whether proceedings in the earlier-filed 10-1066 Action should also be stayed is discretionary with the court, but Elpida submits they should not be. The Court's Scheduling Order (D.I. 30) does not contemplate trial or *Markman* proceedings until after the initial hearing is scheduled to be held before the ALJ in the ITC, and there would appear to be no reason why the parties' discovery proceedings cannot go forward. Since the documentary discovery and most of the witnesses to be deposed in connection with the accused products in the 10-1066 Action and the ITC Action will overlap, Elpida submits that discovery in the 10-1066 Action and the ITC Action can (and should) proceed in tandem, pursuant to agreement among the parties to allow use of the same discovery in each proceeding. This will avoid later, burdensome duplication of discovery on the same accused products.

[4]   Elpida recognizes that ITC decisions are not legally binding in the district courts, but this does not mean that the ITC decision will not have a substantial impact on the issues, if any, that the parties may wish to further litigate.

Specifically, the five patents originally asserted against Elpida in the 10-1066 Action and the three patents newly asserted against Elpida in the Washington and ITC Actions (and the present declaratory judgment action) derive from the same DRAM patent portfolio.  All were brought to Elpida's attention during the same negotiations.  All relate to purported incremental advances in DRAM technology.  Seven of the patents are circuitry related and fall into the same Patent and Trademark Office ("PTO") class. (10-1066 Action, D.I. 1, Exhs. A, B, E, F; 11-623 Action, D.I. 1, Exhs. A–C.)  Four name the same sole inventor.  All are asserted against the same Elpida DDR2 and DDR3 SDRAM products, including the identical exemplary part; and it appears IV is accusing the same DRAM circuits within the accused products.  (10-1066 Action, D.I. 1, ¶¶ 27, 37, 47, 57, Exhs. E, F; 11-623 Action, D.I. 1, ¶ 20, Exhs. A, C.)

Accordingly, the fact and expert witnesses on technical issues are likely to be the same, including the one inventor actually employed by IV, G. R. Mohan Rao.  And, document discovery is likely to be nearly coextensive.[5]  In fact, the only patent that could be said to relate

---

[5]  The originally asserted patents against Elpida in the 10-1066 Action are:

| U.S. Patent No. | Inventor | Subject Matter |
| --- | --- | --- |
| 6,462,998 | Proebsting | DRAM circuitry for timing activation of memory array sense amplifiers. |
| 6,373,753 | Proebsting | DRAM circuitry for regulating memory array word line voltage. |
| 5,598,374 | Rao | DRAM circuitry for simultaneously addressing and precharging different banks within memory arrays. |
| 5,581,513 | Rao | DRAM circuitry for addressing memory arrays to speed data output. |
| 6,455,937 | Cunningham | Barrier layers to stop migrating copper ions. |

The newly asserted patents against Elpida in this action and the Washington and ITC Action are:

(continued…)

to semiconductor fabrication, rather than semiconductor memory circuits, was included by IV in the original 10-1066 Action. (10-1066 Action, D.I. 1, Exh. C.) If IV thought that patent was sufficiently similar to be included with the other circuitry patents asserted in the 10-1066 Action, it is hard to understand a legitimate basis for wanting to assert three much more closely related circuitry patents in a separate action.

Claim construction issues in the original 10-1066 Action and in the Washington, ITC, and 11-623 Actions will also be similar. For example, the claim terms "control circuitry," "array," "memory cells," "row," and "column" are shared between U.S. Patent No. 5,581,513 to Rao (at issue in the 10-1066 Action) and U.S. Patent No. 5,654,932 to Rao (at issue in the Washington, ITC, and 11-623 Actions). (10-1066 Action, D.I. 1, Exh. E, claim 1; 11-623 Action, D.I. 1, Exh. A, claim 1.) Many of these terms also appear in the claims of U.S. Patent No. 5,598,374 to Rao (at issue in the 10-1066 Action) and U.S. Patent No. 5,982,696 to Rao (at issue in the Washington, ITC, and 11-623 Actions). (10-1066 Action, D.I. 1, Exh. F, claim 1; 11-623 Action, D.I. 1, Exh. C, claim 1.)

It is for reasons such as these that courts have consistently held that cases involving the same accused product and similar patents should be tried together. *See, e.g.*, *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, C.A. No. 06-514-GMS, 2007 WL 2892707, at *3-5 (D. Del. Sep. 30,

| 5,654,932 | Rao | DRAM circuitry for addressing memory arrays to speed data output. |
| 5,982,696 | Rao | DRAM circuitry for addressing memory arrays to speed data output. |
| 5,963,481 | Alwais, et al. | DRAM arrays with SRAM cache on the same substrate to speed data output. |

2007). For example, in *Abbott Diabetes*, Abbott filed a patent infringement action against DexCom alleging infringement of four patents. *Id.* at *1. About one year later, Abbott sued DexCom again, alleging infringement of three additional patents from a different family. *Id.* After finding that "the witnesses, documents, and exhibits related to [the] accused device likely will be the same for all seven patents asserted in the two cases," the Court granted DexCom's motion to consolidate the cases. *Id.* at *3-5. As the Court described, the situation in *Abbott Diabetes* nearly mirrors the present one:

> The related technologies at issue in these patents, the fact that all claims of infringement are based on the same device, and that both cases involve the same parties lead the court to conclude that judicial resources likely will be conserved by consolidating these two cases. Thus, the court will grant the motion to consolidate.

*Id.* at *4.

The Court was swayed in part by the fact that half of the patents asserted in the first case were in the same PTO class as all of the later-asserted patents. *Id.* at *4–5 n.5. Here, seven of IV's eight patents are in the same class. The only exception is a semiconductor fabrication patent, which IV deemed sufficiently related to include in the original 10-1066 Action.

IV's suggestion that its patents are not closely related because they are not part of the same patent family is without merit. The patents in *Abbott Diabetes*, and the patents in *Thales Airborne Systems S.A. v. Universal Avionic System Corp.*, C.A. No. 05-853-SLR, 2006 WL 1749399 (D. Del. Jun. 21, 2006) (discussed below), were not all in the same family. The same is true in the case of *Intel Corp. v. AmberWave Sys. Corp.*, 233 F.R.D. 416 (D. Del. 2005), discussed below with respect to proper application of the first-to-file rule.

Elpida submits that it makes no sense to try IV's closely related infringement claims against the same accused products piecemeal in different courts.

7

### B. IV's Motion To Dismiss Or Transfer Should Be Denied Because Under A Proper Reading Of The First-To-File Rule, The First Filed Case Is IV's Earlier-Filed 10-1066 Action In This Court

#### 1. The Forum Of The First-Filed Case Is The Court In Which A Party First Brought Suit On The Subject Matter At Issue

It is well-established that, Delaware is the favored forum for any cases between IV and Elpida relating to IV's DRAM portfolio and Elpida's SDRAM. In December 2010, IV commenced the first-filed 10-1066 Action against Elpida in the District of Delaware. Courts have consistently held that the first-filed forum for purposes of the first-to-file rule is where the parties originally sued each other, even if the parties later raise additional or new claims in subsequently filed cases on related subject matter or add parties. *See, e.g.*, *Intel*, 233 F.R.D. 416; *Kimberly-Clark Corp. v. McNeil-PPC, Inc.*, 260 F. Supp. 2d 738, 739 (E.D. Wis. 2003); *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 423–24 (2d Cir. 1965); *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 182–86 (1952).

The *Intel* case is very similar to the present case. Intel filed a declaratory judgment action against AmberWave in the District of Delaware relating to one issued patent and mentioning that other AmberWave patents of similar subject matter would issue soon. *Intel*, 233 F.R.D. at 416–17. Shortly after the first pending patent application issued, AmberWave filed an infringement action in Texas on the newly issued patent. *Id.* at 417. Intel responded with another declaratory judgment complaint in Delaware on the newly issued patent. *Id.*

The court held that the original Delaware declaratory judgment action was the first-filed case and allowed Intel to supplement its complaint to add the new patent. *Id.* at 418–19. In reaching this holding, the court found that the subject matter of the two patents-at-issue in the

first declaratory judgment action was closely related.[6]

In *Intel*, as in the present case, the patents were not related in the sense of being in the same patent family or sharing a common specification. Nevertheless, the court held that the patents were closely related because they were directed to the same subject matter and technology, and should be tried together for judicial economy:

> [A]t a minimum, presentations on infringement for both the '292 and the '371 patents will require a judge, on the summary judgment motions that are sure to be filed, and a jury, at any trial of the case, to become familiar with the same field of art, the same fundamental science and technology associated with the methods of semiconductor fabrication, the same allegedly infringing devices, and, in any damages analysis, the same pricing, sales, and related market data.

*Id.* at 418.

Important policies underlie the first-to-file rule:

> The issue, however, is not which of the claims was filed first, but rather which action was filed first . . . . If . . . each court were to determine as to each claim in the action before it whether it was filed first and whether to allow it to proceed in this court, it would unduly complicate what should be a purely procedural threshold issue . . . . Furthermore, accepting such a distinction would sanction additional procedural fencing. For example, if the

---

[6] *See, e.g.*, *Saes Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1090 (S.D. Cal. 2002) ("[A] number of courts have concluded that the first-filed forum is the one in which the parties originally were brought, not the one in which the precise issue was first raised. In other words, the forum with priority is the one where the parties initially sued each other, even if the parties raise a different claim in a subsequently filed suit in a different forum."); *Applied Vision, Inc. v. Optical Coating Lab, Inc.*, No. C97-1233, 1997 WL 601425, at *5 (N.D. Cal. Sept. 23, 1997) (Holding that a previously-filed complaint on a different patent was the first-filed lawsuit as "the technology, parties and circumstances surrounding the patents in question are similar enough to be considered to share a common core of operative facts."); *Owens-Illinois Glass Container, Inc. v. B&H Mfg., Inc.*, 13 U.S.P.Q.2d (BNA) 2061, 2062, 2064 (E.D. Cal. 1989) (Using the first-to-file rule to transfer a case relating to a newly-issued patent to a venue in which a case on a related patent was already pending.); *Cosden Oil & Chem. Co. v. Foster Grant Co.*, 432 F. Supp. 956, 960 (D. Del. 1977) ("[The accused infringer] is entitled to be free from the 'vexation of subsequent litigation over the same subject matter,' and the courts are entitled to be free from the waste and inefficiency involved in duplicative litigation.").

> second-filed party wanted to defeat the first-filed rule under similar circumstances, it need only add an additional claim to its complaint, i.e. a claim not present in the other party's first-filed action. It would then be able to argue that its new claim should be considered separately from any claims filed by the other side. This would lead to disjointed litigation and would thwart any semblance of judicial economy and efficiency.

*Kimberly-Clark*, 260 F. Supp. 2d at 740–41.

### 2. In The Present Case, Delaware Is The Forum Of The First-Filed Case Between The Parties Concerning The Subject Matter At Issue Because IV Filed The Original 10-1066 Action In Delaware

The present set of facts compel proceeding with the 11-623 Action in Delaware even more strongly than *Intel* and *Kimberly-Clark* because—not only are the patents at issue so closely related (as discussed above)—but also IV's newly asserted patents existed when IV filed the 10-1066 Action (and were in fact brought to Elpida's attention by IV previously).

IV's efforts at gamesmanship should be rejected just as the gamesmanship was rejected by the *Kimberly-Clark* court. By upholding the 11-623 Action, all disputes between IV and Elpida concerning IV's DRAM patent portfolio can be heard in one forum, the District of Delaware—the forum IV originally chose. *See Corixa Corp. v. IDEC Pharm. Corp.*, C.A. No. 01-615-GMS, 2002 WL 265094, at *1 (D. Del. Feb. 25, 2002) (The first-to-file rule "serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters.").

The cases cited by IV do not dictate otherwise. For example, in *Abbott Laboratories v. Johnson & Johnson, Inc.*, 524 F. Supp. 2d 553 (D. Del. 2007), the court was presented with materially different facts. In *Abbott Labs.*, a case involving one group of patents was pending in Delaware; months later, Johnson & Johnson filed an infringement action in New Jersey on an additional patent; and shortly thereafter, Abbott filed a declaratory judgment action in Delaware on the additional patent. *Id.* at 554–56. Abbott argued that the first-filed case was the original

10

case pending in Delaware. *Id.* at 558. The court rejected this argument after finding that the additional patent did not exist at the time of the filing of the first case. *Id.* Thus, it was for this reason that it was proper to ignore the original case when performing the first-to-file analysis.[7]

Here, the patents at issue in the Washington and 11-623 Actions existed when IV filed the 10-1066 Action, and were brought to Elpida's attention during the same negotiations as the original patents. IV presumably chose not to assert the new patents for intentional strategic purposes. Further, unlike in *Abbott Labs.*, IV initially chose Delaware as the forum and can hardly argue that litigating the newly asserted patents in Delaware is unjust.

### 3. There Are No Exceptional Circumstances That Would Make It Unjust Or Inefficient To Proceed With The 11-623 Action

There is no evidence that any of the exceptions to the first-to-file rule apply in this case. IV has brought three other actions in the District of Delaware—the first against Altera Corporation et al., Civil Action No. 10-1065-LPS (D. Del.), the second against Check Point Software Technologies Ltd. et al., Civil Action No. 10-1067-LPS (D. Del.), and the third against Canon Inc. et al., Civil Action No. 11-792-SLR (D. Del.). And more significantly, allowing the 10-1066 Action to proceed in Delaware will allow later for a more efficient resolution of the dispute between IV and Elpida since the 11-623 Action can be consolidated with the 10-1066 Action to try any remaining disputes between IV and Elpida after the ITC Action is complete.

It is immaterial that certain customer-defendants are not parties to the 11-623 Action, since the real parties-in-interest are Elpida and Hynix, the manufacturers of accused products.

---

[7] *Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp. 2d 579 (D. Del. 2007), and *Remy Inc. v. CIF Licensing, LLC*, C.A. No. 06-785-GMS/MPT, 2008 WL 2358963 (D. Del. Jun. 9, 2008), are inapposite because they do not involve a three case fact pattern like the present case, but rather are cases in which the proper defendant was not joined in the first-filed case. *Ellenby Techs., Inc. v. AT Sys. Inc.*, C.A. No. 01-416-SLR, 2002 WL 356686 (D. Del. Feb. 8, 2002), is also inapposite because it involves a situation in which the correct patent owner was not (continued…)

*See, e.g.*, *Hooker Chems. & Plastics Corp. v. Diamond Shamrock Corp.*, 87 F.R.D. 398, 403–04 (W.D.N.Y. 1980). In *Hooker*, the patentee argued that certain customers of accused infringer Hooker were only parties to patentee's second-filed case. *Id.* The court held that the lack of the customer-defendants was not a reason to proceed with the second-filed case because "in either forum Hooker will be the real party in interest, obligated to defend and indemnify for the apparatus and any technology which it sold to [the customer-defendants]." *Id.* at 403. Similarly, in the present case, Elpida is the real party-in-interest with respect to the accused Elpida products, and Elpida is providing for the defense of the customer-defendants against IV's allegations based on Elpida's products.[8]

### C. The 11-623 Action Is A Proper Declaratory Judgment Action Because There Is An Actual Controversy Between IV And Elpida, And Because It Was Brought In The Forum IV Originally Chose

IV's argument that the 11-623 Action is not a proper declaratory judgment action because Elpida is forum shopping is without merit.

First, the 11-623 Action presents a proper claim for declaratory relief because there is an actual controversy between IV and Elpida that is both real and imminent—as evidenced by the 10-1066 and Washington Actions. *See Maryland Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941). Courts have consistently held that subject-matter jurisdiction is proper when a declaratory judgment action is filed concerning the same patent and accused product as an earlier-filed infringement action. *See, e.g.*, *Cosden*, 432 F. Supp. at 956.

---

a party to the first-filed case, not a case involving three related actions like the present case.

[8] *Thales* also does not support IV's position. On the contrary, while the court noted in passing that the first-filed rule's "application seems limited to actions 'involving the same patents,'" the court decided that the first-filed case was the case where one party first brought suit on the first two patents put in issue, not the later filed case where the other party sought to add two new patents on closely related technology. *Thales*, 2006 WL 1749399, at *4.

Second, the 11-623 Action is not an improper attempt at forum shopping. Rather, it is a response to IV's filing of the Washington Action—itself an improper attempt at forum shopping. Elpida filed the 11-623 Action in Delaware, the forum first chosen by IV for its litigation of its DRAM patent portfolio against computer memory manufacturers. IV chose Delaware, not Elpida. But, in an attempt to create piecemeal litigation and burden the courts and parties, IV filed a second action in the Western District of Washington. To the extent that there are inefficiencies in having multiple cases, they are of IV's own making because the patents at issue could have been included in a single action.

The present case does not exhibit the hallmarks of improper declaratory judgment forum shopping found in the cases cited by IV. Elpida did not choose Delaware "in a race for res judicata" as in *Terra Nova Insurance Co. Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213 (3d Cir. 1989). Nor did Elpida file the 11-623 Action to add a claim that it was not allowed to add to the Washington Action as in *Apotex Inc. v. Sanofi-Synthelabo*, 386 F. Supp. 2d 549 (S.D.N.Y. 2005). Rather, Elpida filed a declaratory judgment action in Delaware in an effort to have all of the disputes between IV and Elpida concerning IV's patent portfolio heard in IV's original forum.

### D.     The Court Should Deny IV's Motion Without Prejudice, Or Defer Ruling On The Motion, Until After The ITC Action Is Returned To District Court

The statutory scheme mandates that the ITC Action on the three newly asserted patents will proceed first as the three patents asserted against Elpida in this action and the Washington Action are also at issue in the ITC Action. *See* 28 U.S.C. § 1659(a); *Fuji Photo Film Co., Ltd. v. Benun*, 463 F.3d 1252, 1256 (Fed. Cir. 2006).

Since the ITC Action may well lead to a final resolution of the underlying dispute, or otherwise have a substantial impact on what issues, if any, the parties may wish to litigate further in district court, it makes sense to wait until after completion of the ITC proceedings before

13

deciding how the remaining issues should be tried. Accordingly, Elpida submits that the Court should defer deciding IV's motion because, if both the Washington and 11-623 Actions are stayed, it is immaterial at this point which action proceeds and which is dismissed. If and when the ITC Action is returned to district court, then this Court (and the Washington court) will be in a better position to gauge the facts and decide in which district court the action should proceed.

## IV.   CONCLUSION

For the foregoing reasons, IV's motion to dismiss, or in the alternative transfer, the 11-623 Action should be denied without prejudice. Alternatively, the Court should defer deciding IV's motion until after the ITC Action is returned to district court.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Elpida Memory, Inc. and Elpida Memory (USA) Inc.*

*Of Counsel:*

George E. Badenoch
Richard M. Rosati
Thomas R. Makin
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Tel: (212) 425-7200
gbadenoch@kenyon.com
rrosati@kenyon.com
tmakin@kenyon.com

Dated: September 19, 2011
1028083v1 / 36354

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on September 19, 2011, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on September 19, 2011, the attached document was Electronically Mailed to the following person(s):

| | |
|---|---|
| Joseph J. Farnan, III, Esquire<br>Farnan LLP<br>919 North Market St.<br>12th Floor<br>Wilmington, DE 19801<br>jjfarnan@farnanlaw.com | Brian E. Farnan, Esquire<br>Farnan LLP<br>919 North Market St.<br>12th Floor<br>Wilmington, DE 19801<br>bfarnan@farnanlaw.com |

Jack B. Blumenfeld, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
Wilmington, DE  19899-1347
jblumenfeld@mnat.com

By:   */s/ David E. Moore*
        Richard L. Horwitz
        David E. Moore
        POTTER ANDERSON & CORROON LLP
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

995788/36390